UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WAYNE V. JOHNSON, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:14-cv-01310 |
| | ) JUDGE CRENSHAW |
| FORTUNE PLASTICS OF TENNESSEE, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Wayne V. Johnson filed this action against Fortune Plastics of Tennessee ("Fortune Plastics") challenging his demotion under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and his termination from employment under the FMLA, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. (Doc. No. 28, First Amended Complaint at ¶¶ 19, 20 and 21.) For the following reasons, Fortune Plastics' Motion for Summary Judgment (Doc. No. 36) is GRANTED.

**I.      Undisputed Facts**

Johnson is an African American man who was fifty-five years old when Fortune Plastics moved him to a different job position and, five months later, terminated his employment. (Doc. No. 28 at 2.) Fortune Plastics manufactures can liners, supermarket items, bags, and other industrial products in Lebanon, Tennessee. (Doc. No. 46 at 1.) It hired Johnson in 1978 and he later became a Lead Operator. (Id. at 2-3.)  Eric Taylor was the Plant Manager. (Id.) Keith Anderson was the General Manager until mid-December 2013, when Karl Lehtola replaced him.

(Id.; Doc. No. 36-4 at 6-7.) Plaintiff concedes that he never heard Taylor, Anderson or Lehtola make a discriminatory statement. (Doc. No. 46 at 3.)

Johnson received every FMLA leave request he made. (Doc. No. 6.) From May 21, 2013 to May 30, 2013, and from June 7, 2013 to July 24, 2013, Johnson was approved for medical leave under the FMLA. (Id. at 5-6.) During Johnson's June-July FMLA leave, Taylor and Anderson moved Edward Young, a white male, to the Lead Operator position and placed Johnson in a Senior XO position when he returned from leave.[1] (Id. at 8.) Their decision was made because Johnson was not trained on the new software system[2] and because of concerns about Johnson's job performance and his attention to safety precautions. (Id. at 8-9.) Johnson was informed of his reassignment upon his return from FMLA leave on July 24, 2013. Fortune Plastics did not tell him that he was being demoted. (Id. at 9.) Indeed, there was no change in his pay, benefits, work shift or hours of work. (Id.) As the Senior XO, Johnson would continue to be involved in the supervision of employees, as he had done as the Lead Operator. (Id. at 10.)

On December 16, 2013, Johnson committed a safety violation that caused his co-worker, Celeste Burch, to suffer an injury. (Id. at 13-14.) Johnson turned off the folder machine to investigate the cause of a jam, removed the safety guard, but failed to disconnect the machine from its energy source when he walked away from the machine. (Id. at 13.) He admits that he did not lock the machine when he removed the safety guard as required by the company's "lock-out, tag-out procedure." He was unable to lock out the machine because the lock was not in its proper place and he was unable to locate it. (Doc. Nos. 46 at 13-15; 36-4 at 44-45.) After Johnson walked away to look for a lock, Burch turned the machine on and began pulling bags from the machine when

---

[1] The parties do not explain the meaning of the term "XO."

[2] The Lead Operator is responsible for providing guidance on the software system to other employees. (Doc. No. 46 at 7.)

2

her finger was injured. (Doc. No. 46 at 14.) While Burch went to the restroom to wash off her injured finger, Johnson also pulled bags off the folder machine, which was still running. (Id. at 14-15.) About ten to fifteen minutes after Burch's injury, she and Johnson walked away from the folder machine to report her injury. (Id.) Johnson again failed to turn off the machine before walking away from it. (Id.) However, Johnson believes that he instructed another employee to "shut the whole line down." (Doc. Nos. 46 at 14; 36-4 at 48.)

After the December 16, 2013, incident, Fortune Plastics conducted an investigation. Among other things, Johnson admitted that he had been trained on the proper "lock-out, tag-out procedure," that he did not follow the company's safety precautions, and that Burch would not have been injured if he had stayed by the machine after removing the safety guard and sent someone else to find a lock. (Id. at 16.) He also admits that he had previously received a safety warning when he permitted a subordinate to repair a machine without using the company's lock-out, tag-out procedure. (Id. at 19-20.) On December 20, 2013, after concluding the investigation, Johnson was terminated for the December 16, 2013 safety violations. (Id. at 17-18.) The company also terminated Burch, a white female, for her involvement in that accident. (Id. at 19.)

Fortune Plastics has disciplined and terminated other employees for safety violations. (Id. at 20.) In 2014, the company terminated two white males – Josh Bozarth and Josh Brewington - under the age of forty for violating workplace safety rules. (Id.) Also in 2014, three white employees, two over 40 years and the third who was 40 at the time, were disciplined for failing to lock-out while making repairs. (Doc. No. 46 at 20-21.) They were not terminated because their safety violations were less egregious than Johnson's violation. (Id. at 21.)

## II. Legal Standard

In reviewing a motion for summary judgment, this Court will only consider the narrow

question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court is required to view "the facts and reasonable inferences in the light most favorable to the nonmoving party . . . ." Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016) (citing Cass v. City of Dayton, 770 F.3d 368, 373 (6th Cir. 2014)).

**III. Analysis**

Johnson alleges that he was subjected to retaliation and discrimination. He alleges that he was demoted and terminated in retaliation for requesting FMLA leave and that his termination was unlawful under the FMLA, ADEA, and Title VII.[3] (Doc. No. 28.)

**A. FMLA**

The FMLA entitles eligible employees to twelve-weeks of leave and reinstatement to their previous or an equivalent position. Edgar v. JAC Prods., Inc., 443 F.3d 501, 506 (6th Cir. 2006) (quoting 29 U.S.C. § 2614(a)(1)). Employers are prohibited from "us[ing] the taking of FMLA leave as a negative factor in employment actions." Hunter v. Valley View Local Sch., 579 F.3d 688, 690–91 (6th Cir. 2009) (alteration in original) (quoting 29 C.F.R. § 825.220(c)).

Johnson claims that Johnson Plastics demoted him from Lead Operator to Senior XO and later terminated him in retaliation for his taking FMLA leave. (Doc. No. 28 at ¶¶ 21, 39.) To establish a prima facie case of retaliation under the FMLA, an employee must show that "(1) he or she engaged in an activity protected by the FMLA; (2) the employer knew that he or she was

---

[3] If Johnson intended to raise a Title VII racially hostile work environment claim, he failed to provide any factual allegations, evidence or argument to support it in the First Amended Complaint or in response to the motion for summary judgment. (Doc. Nos. 28 and 45.) McPherson v. Kelsey, 125 F.3d 989 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

exercising FMLA rights; (3) he or she suffered an adverse employment action; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." Ferrari, 826 F.3d at 888.

**1. Job Reassignment**

There is no dispute that Johnson engaged in protected activity by exercising his right to take leave under the FMLA and that Fortune Plastics was aware that he was exercising FMLA rights. However, Fortune Plastics argues that he has not shown that his reassignment to the Senior XO position was an adverse employment action. (Doc. No. 36-1 at 19-21.) "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case," and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Burlington Northern and Santa Fe Railway Company v. White, 548 U.S. 53, 71 (2006). For a reassignment to constitute an adverse employment action, the employee must be able to show, at a minimum, "a quantitative or qualitative change in the terms of the conditions of employment." Deleon v. Kalamazoo Cty. Rd. Comm'n, 739 F.3d 914, 919 (6th Cir. 2014). "[A]n employee's transfer may constitute a materially adverse employment action, even in the absence of a demotion or pay decrease, so long as the particular circumstances present give rise to some level of objective intolerability." Id. Johnson admits that both the Lead Operator and Senior XO positions involve the supervision of XO employees and that the change in position did not result in a reduction in his pay or benefits nor a change in his work shift or hours of work. (Doc. No. 46 at 9-10.) He has not shown a quantitative or qualitative change in the terms of his employment nor any level of objective intolerability. Thus, he has failed to show he suffered an adverse employment action. Obnamia v. Shinseki, 569 Fed. Appx. 443, 446 (6th Cir. 2014) ("[R]eassignments without salary or work hour changes do not ordinarily constitute adverse

5

employment decisions in employment discrimination claims."); Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996) (same); Cherry v. Unipres U.S.A., Inc., No. 3:04CV0036, 2006 WL 288645, at *6 (M.D. Tenn. Feb. 6, 2006) (finding shift transfer with no change in pay, benefits or an appreciable change in responsibilities was not an adverse employment action).

Fortune Plastics also argues that Johnson has not established a causal connection between his use of FMLA leave and his reassignment. (Doc. No. 36-1 at 21-22.) To establish a causal connection, Johnson must show that the "true motivation" for the reassignment was not the reason given, but was instead the result of his taking a medical leave of absence. Tennial v. United Parcel Serv. et al., No. 15-6356, 2016 WL 6156315 at *9, — F.3d —, (6th Cir. October 24, 2016). Johnson argues that the proximity in time between his return from FMLA leave and his reassignment show causation. (Doc. No. 45 at 15.) However, "[t]he law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim." Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 321 (6th Cir. 2007). Johnson has not shown causation.

Furthermore, even if Johnson could establish a prima facie case of FMLA retaliation based on his reassignment, he cannot show that his employer's proffered legitimate, non-retaliatory reason for reassigning him was a pretext for retaliation. Johnson does not dispute that prior to his June-July FMLA leave, Taylor had concerns about his job performance and attention to safety precautions based on co-workers' concerns that he seemed distracted an inattentive to safety precautions. (Doc. No. 46 at 7 and 9.) He also does not dispute that he had not been trained on the new software system that was implemented in the warehouse during his absence or that this was a factor in Taylor's decision to move him to a different position. (Id. at 8-9.) Instead, he argues that his employer's stated reason for reassigning him has no basis in fact because he was told he would

6

resume his Lead Operator duties when he felt better and because he could have easily learned the new system. (Doc. No. 45 at 15-16.)

Under the "modified honest-belief doctrine," "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, 'the employer must be able to establish its *reasonable* reliance on the particularized facts that were before it at the time the decision was made.'" Russell v. Univ. of Toledo, 537 F.3d 596, 605 (6th Cir. 2008) (quoting Wright v. Murray Guard, Inc., 455 F.3d 702, 708 (6th Cir. 2006) (emphasis in original). "The employee then has the opportunity to introduce contrary evidence, but the decisional process need not be optimal, only reasonably informed and considered." Id.

Fortune Plastics has shown its decision to reassign Johnson was made in reasonable reliance on the facts that Johnson's supervisors were concerned about his inattentiveness to safety precautions and his lack of training and familiarity with the new software system. Johnson does not have evidence from which a reasonable jury could determine that Johnson Plastics' non-retaliatory reason for reassigning him was pretext for FMLA retaliation.

### 2. Termination

Johnson's claim that he was terminated in retaliation for using FMLA time, also fails because he is unable to show a causal connection between the two events. Again, temporal proximity, without more, is not sufficient to establish a causal connection for a retaliation claim. Tuttle, 474 F.3d at 321. As Johnson offers no other evidence of causation, he has failed to establish a prima facie case of FMLA retaliation based on his termination.

### B. Title VII and ADEA Discrimination Claims

Johnson asserts that Fortune Plastics discriminated against him on the basis of his race and age, in violation of Title VII and the ADEA. Without direct evidence of discrimination, Johnson's

7

claims are also analyzed under the McDonnell Douglas framework. Ladd v. Grand Trunk W.R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009) (Title VII); Geiger v. Tower Auto., 579 F.3d 614, 622 (6th Cir. 2009) (ADEA). To establish a prima facie case of intentional race discrimination under Title VII, Johnson must show that "(1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee." Deleon v. Kalamazoo Cty. Rd. Comm'n, 739 F.3d 914, 918 (6th Cir. 2014). To establish a prima facie case for age discrimination under the ADEA, Johnson must show that "(1) he was a member of the projected class, i.e., 40 years old or older, (2) he suffered an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was replaced by a substantially younger employee, or additional evidence shows that the employer was motivated by age." Id. Johnson must prove that his age was the "but for" cause of the challenged adverse employment action. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009); Richardson v. Wal–Mart Stores, Inc., — F.3d —, 2016 WL 4709865, at *3 (6th Cir. 2016).

Under Title VII and the ADEA, there is no dispute here that he was a member of the protected class under each statute, suffered an adverse employment action, or was otherwise qualified for the position. He cannot show that he was replaced by someone outside the protected racial class or substantially younger because he admits he does not know who replaced him. (Doc. No. 46 at 21.) Instead, he argues that individuals outside of his protected class were treated more favorably despite engaging in similar conduct.

For cases involving differential disciplinary action, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or

8

mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)). "The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated;' rather, ... the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects'." Id. (quoting Pierce v. Commwlth. Life Ins. Co., 40 F.3d 796, 802 (6th Cir.1994)) (emphasis in original).

To advance his race claim, Johnson argues that Lisa Cross, a white female who was also over age forty, and Bobby Newman, a white male, were treated more favorably because they were injured at work and not disciplined. (Doc. No. 45 at 9.) However, it is undisputed that neither employee bypassed any safety features or were aware of machines related issues that caused their injuries. (Doc. No. 36-3 at ¶¶ 7-8.) Unlike Johnson, neither violated safety rules, created a safety hazard or were injured due to their own actions. Johnson also argues that three white employees—Tidwell, Hunt, and Earnhardt—engaged in safety violations but were disciplined rather than terminated, but, it is undisputed, their safety violations were less egregious than Johnson's. (Doc. Nos. 45 at 9-10 and 46 at 20-21.) Two of these employees were over the age of forty and the third was forty, so Johnson's use of them as comparators for his age claim is weak. Again, unlike Johnson, they did not create a safety risk for their co-workers. Johnson has not shown that these comparators "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish" Fortune Plastics' treatment of them and him. Ercegovich, 154 F.3d at 352. His Title VII and ADEA claims fail. His ADEA claim fails for the additional reason that he has not shown that his age was the "but for" cause of his termination. Richardson,

9

2016 WL 4709865 at *3. He admits that his violation of workplace safety rules both in the past and present played a role in Fortune Plastics' decision to terminate his employment. (Doc. No. 46 at 18-19.)

**IV.     Conclusion**

For the foregoing reasons, the Court will GRANT Fortune Plastics' motion for summary judgment.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE